**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRACY L. JOHNSON,**

    **Plaintiff,**

    v.                                               **Case No. 2:05-CV-00173**

**KINDRED NURSING CENTERS EAST**        **Judge Smith**
**LLC, DBA MINERVA PARK NURSING
AND REHABILITATION CENTER,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff Tracy Johnson, an employee of Defendant Kindred Nursing Center East, LLC, asserts an Ohio common law claim alleging Defendant employer committed the intentional tort of knowingly exposing Plaintiff to a dangerous condition that caused Plaintiff's injury. Because this claim presents diverse parties and an amount in controversy exceeding $75,000, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56, Defendant moves for summary judgment (Doc. 47). Additionally, Plaintiff moves to strike Defendant's affirmative defenses (Doc 46), and Defendant moves *in limine* to exclude Plaintiff's expert testimony (Doc. 62). This Court previously acknowledged that Defendant's Motion for Summary Judgment could dispose of the additional motions and the case altogether. *Johnson v. Kindred Nursing Ctrs*, No. 2:05-cv-173, 2006 WL 3350716 at *1 (S.D. Ohio, Nov. 17, 2006) ("Defendant correctly asserted in the Motion to Stay that its

Motion for Summary Judgment could potentially be dispositive of the entire case . . . . If that is the case, then the Court may not even need to address Plaintiff's motion to strike . . . .").

For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 47) and **DENIES** as moot both parties' additional motions (Docs. 46 and 62).

### I.  FACTS

In considering Defendant's Motion for Summary Judgment, the Court considers factual allegations presented in the pleading, as well as testimony from depositions, answers to interrogatories, and affidavits. FRCP 56(c).

Plaintiff Tracy Johnson is a resident of the State of Ohio. Defendant Kindred Nursing Centers East LLC (hereinafter "Kindred") is incorporated in Delaware with principal business operations in Louisville, Kentucky.

In September of 2004, Plaintiff worked as a nurse at the Defendant-employer's Minerva Park Nursing and Rehabilitation Center. On the evening of September 5th, Plaintiff witnessed a patient falling out of bed and rushed into the room to prevent the fall. At the time Plaintiff made contact with the patient, she was not wearing protective gloves. (Pl.'s Reply to Def.'s Mot. for Summ. J. at 8 (*citing* Johnson Depo. at 92).

Plaintiff developed a boil on her abdomen, though a hospital visit September 11, 2004 did not uncover the nature of the infection. Plaintiff later learned that she had contracted *Staphylococcus aureus* ("MRSA") and reported this discovery to her employer October 4, 2004. (Def.'s Mot. for Summ. J. at 5 (*citing*  Johnson Dep. I at 147–150)). Upon learning of a possible infection, Kindred conducted a "skin check" investigation of

the Center's patients and performed a wound culture on the patient Plaintiff had assisted on the night of September 5th. (Def.'s Mot. for Summ. J. at 5). Kindred learned that the patient had been diagnosed with MRSA on October 8, 2004. (*Id.*). Plaintiff does not contest these facts.

Despite these uncontested facts, Plaintiff claims that Defendant had knowledge of the patient's MRSA infection prior to the September 5th encounter. (Am. Compl. at 2). Kindred had previously sent the same patient off-site for a wound culture on August 26th of that year to investigate a serious skin infection (Def.'s Mot. for Summ. J. at 6). The hospital diagnosed the patient with MRSA August 29th, but failed to communicate this information to Kindred. (*Id.* at 6). Plaintiff does not directly contest these facts. (*See generally* Pl.'s Reply to Def.'s Mot. for Summ. J. at 4–6) (claiming that circumstantial evidence suggests Kindred knew of the MRSA infection prior to the September 5th encounter).

Based on these facts, Plaintiff alleges the following: (1) Kindred knew of a dangerous condition (MRSA) in the employment environment; (2) Defendant knowingly exposed Plaintiff-employee to the dangerous condition; and (3) as a proximate result of Defendant's intentional tortious conduct, Plaintiff contracted MRSA, suffering physical and psychological injuries. (*See* Am. Compl. at 2). Defendant generally demurs on each allegation. (Def.'s Mot. for Summ. J. at 3).

## II.  STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id., quoting Liberty Lobby*, 477 U.S. at 257. The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id., quoting Matsushita*, 475 U.S. at 586.

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  DISCUSSION

Like many states, Ohio has a statutory workers' compensation scheme that provides the exclusive remedy for most employee claims against employers. *See* Ohio Rev. Code Ann. § 4123.74.  Because of this public policy, "an employer's conduct must be genuinely egregious before an injured employee is permitted to avoid [this] bar . . . ." *Feinster v. Ford Motor Co.*, No. 94-4127, 1996 WL 11078 at *3 (6th Cir., Jan. 10, 1996). Thus, to bring a claim of intentional tort against an employer, the employee must establish the following elements: the employer (1) had knowledge of the existence of a dangerous condition; (2) knew, to a substantial certainty, that subjecting the employee to such a dangerous condition would cause harm to the employee; and (3) with such knowledge, required the employee to perform the dangerous task. *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999) (*citing Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108, at paragraph one of the syllabus (1991)).

The Ohio General Assembly has attempted to limit the employer intentional tort doctrine numerous times, and, although the Ohio Supreme Court twice struck down superseding statutory employer intentional tort schemes, *Brady v. Safety-Kleen Corp.*, 576 N.E.2d 722, 728–29 (Ohio 1991) (striking down R.C. § 4121.80 under the Ohio Constitution), *Johnson v. BP Chemicals, Inc.*, 707 N.E.2d 1107, 1112–14 (Ohio 1999) (striking down R.C. § 2745.01 on same grounds), the Court has narrowed the application of the doctrine. *See Kelley v. Cairns & Bros.*, 626 N.E.2d 986, 990 (Ohio Ct. App. 9th Dist. 1993) (describing the Ohio Supreme Court's development of the common law employer intentional tort).

Regarding the first prong of the employer intentional tort claim–knowledge of the dangerous condition–the Ohio Supreme Court has held that "[t]he plaintiff has the burden of proving by a preponderance of the evidence that the employer had '*actual knowledge* of the exact dangers which ultimately caused' injury." *Sanek v. Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989) (emphasis added) (*quoting Van Fossen v. Babcock & Wilcox Co.*, 522 N.E.2d 489, 500–501 (Ohio 1988)). Regarding the substantial certainty of harm element, the *Fyffe* Court clarified the intent standard, noting that "the mere knowledge and appreciation of a risk—something short of a substantial certainty—is not intent." *Fyffe*, 570 N.E.2d 1108, at paragraph two of the syllabus.

Plaintiff is correct that the "[*Fyffe* standard] for an employer's intentionally tortious conduct is not 'intent' *per se*, rather it is knowledge of a dangerous condition and knowledge of substantial certainty of harm on the part of the employer." (Pl.'s Reply to Def.'s Mot. to Dismiss at 3). Yet the *Fyffe* Court's articulation of the substantial certainty intent standard did not undercut the Court's prior decision in *Sanek* that plaintiff bears the burden of proving employer's actual knowledge of the dangerous condition. These standards relate to separate parts of the employer intentional tort claim. *See Burns v. Presrite Corp.*, 646 N.E.2d 892, 896 (Ohio Ct. App. 11th Dist. 1994) (noting that the *Sanek* decision's requirement that plaintiff prove defendant-employer's actual knowledge of the dangerous condition did not conflict with the *Fyffe* Court's acknowledgment that substantial certainty of harm did not require the employer to predict the specific harm to the employee).

Thus, in Ohio, the burden of proof for an employer intentional tort is necessarily high; "[t]he line between negligent and reckless conduct on the one hand, and intentional

wrongs on the other, must be carefully drawn lest the purpose of the Workers' Compensation Act be thwarted." *Kelley*, 626 N.E.2d at 990; *see also Van Fossen*, 522 N.E.2d at 503 ("[I]f 'intentional wrong' is interpreted too broadly, this single exception would swallow up the entire 'exclusivity' provision of the [Workers' Compensation] Act . . . .") (citation omitted). Plaintiff in this case has not met the burden of showing employer's actual knowledge of the dangerous condition.

Rather than pointing to specific facts suggesting Defendant's knowledge of a dangerous condition, the majority of Plaintiff's response to Defendant's Motion for Summary Judgment attempts to evade the knowledge requirement or remind this Court of the minimal burden Plaintiff must meet to survive a motion for summary judgment. (*See* Pl.'s Reply to Def.'s Mot. for Summ. J. at 1–4). Plaintiff fails to point to any facts demonstrating Defendant's *actual* knowledge of an MRSA infection prior to October 8, 2004, let alone prior to the September 5, 2004 encounter Plaintiff believes caused her infection. (*See generally* Pl.'s Reply to Def's Mot. for Summ. J. at 4–6). Plaintiff primarily bases Defendant's knowledge of the dangerous condition on the testimony of Dr. Mehr Siddiqui—Defendant's resident physician who treated the MRSA-positive patient—that the nursing home usually receives the wound culture results. (*See id.* at 5 ("Q: In your time at Minerva Park . . ., can you recall any time that culture [results] . . . didn't go to the nursing home? A: No. I *think* they *would* always come to the nursing home because the treatment follow-up has to be done at the nursing home . . . ." (*quoting* Siddiqui Depo. at 106, *l.* 4–10) (emphasis added))). Yet, the speculative language of Dr. Siddiqui's testimony, though it may suggest the routine wound-culturing practice, does

not establish that Defendant had actual knowledge of the MRSA diagnosis before October 8, 2004.

Additionally, Plaintiff relies heavily on *McGee v. Goodyear Atomic Corp.*, 659 N.E.2d 317, 320 (Ohio Ct. App. 4th Dist. 1995) for the proposition that circumstantial evidence may satisfy the knowledge requirement for an employer intentional tort. (Pl.'s Reply to Def.'s Mot. for Summ. J. at 3). Hence, Plaintiff argues the circumstantial evidence of Dr. Siddiqui's testimony, combined with Defendant's step-by-step treatment of the patient's wound from August 22–26 leading up to the hospital wound culture, "present[s] sufficient circumstantial evidence for a trier of fact to find that Defendant did in fact have knowledge of Patient's MRSA prior to September 5, 2004." (*Id.* at 6–7).

This Court finds Plaintiff's expansive reading of *McGee* implausible. Unlike this case, it was not disputed in *McGee* that the defendant employer was aware of the underlying dangerous condition. *See McGee*, 659 N.E.2d at 320, 322 (noting the trial court's concession that the employer knew of "problems with [the toxic chemical] at certain times and places at the plant," *id.* at 320). In reversing the trial court's grant of summary judgment, the *McGee* court permitted circumstantial evidence to prove the degree of employee's exposure to the chemical. *See id.* at 242, 244. The *McGee* court permitted the circumstantial evidence to support the substantial certainty intent standard, not employer's actual knowledge of the underlying dangerous condition. *See id.* at 244–46. In this case, Plaintiff's showing of Defendant's preliminary knowledge of a dangerous condition amounts to nothing more than mere speculation.

Without Defendant's knowledge of the dangerous condition, it cannot be gainsaid that Defendant knew with substantial certainty that exposure to the patient would harm

the Plaintiff. Even drawing all permissible inferences in favor of Plaintiff, the evidence presented at best demonstrates that Kindred knew of *a risk* of MRSA rather than the presence of the dangerous condition of MRSA. However, as the Ohio Supreme Court has recognized, mere awareness of such a risk does not satisfy the intent requirement. *Fyffe*, 570 N.E.2d 1108, at paragraph two of the syllabus.

Ultimately, Plaintiff has failed to establish the most salient features of the employer intentional tort: employer's knowledge of the dangerous condition and intentional exposure of the employee to that condition. There is no genuine issue of material fact. Consequently, this claim cannot withstand Defendant's Motion for Summary Judgment.

## IV.  CONCLUSION

Based on the forgoing, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc 47). Thus, this Court **DENIES** as moot Plaintiff's Motion to Strike (Doc. 46) and Defendant's Motion in Limine to exclude expert testimony (Doc. 62).

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Documents 46, 47, and 62 from the Court's pending motions list.

**IT IS SO ORDERED**

                                             **/s/ George C. Smith**
                                             **GEORGE C. SMITH, JUDGE**
                                             **UNITED STATES DISTRICT JUDGE**